**In-Cho CHUNG, Plaintiff,**

**v.**

**Lawrence PARK, Individually and as President of Mansfield State College, et al., Defendants.**

**Civ. No. 73–371.**

United States District Court, M. D. Pennsylvania.

June 21, 1974.

Martin M. Fine, Williamsport, Pa., for plaintiff.

Robert Nagel, Deputy Atty. Gen., Harrisburg, Pa., for defendants.

## OPINION

MUIR, District Judge.

### I. Introduction.

This civil rights action pursuant to 42 U.S.C. § 1983 was instituted by a college professor at Mansfield State College who alleged that his constitutional rights had been violated when his employment was terminated at the school. In a decision earlier this year, Chung v. Park, 369 F.Supp. 959 (M.D.Pa.1974), the Court held that Plaintiff In-Cho Chung was entitled to tenure under the College's tenure policy. The Court then heard evidence on the issue of whether Dr. Chung received "due process" under the Fourteenth Amendment to the Federal Constitution in the proceedings which led to his discharge.

 The Faculty Handbook sets forth the procedures to be utilized by the College in dismissing a tenured faculty member. The state claims that it is immune from that part of Plaintiff's claim which is based upon the embellishments to his federal constitutional rights contained in the Faculty Handbook. The Commonwealth made a motion for summary judgment on the immunity ground at the time of trial. It will be denied. The Commonwealth also asserts that when Chung accepted the type of hearing which had been worked out by his attorney with the attorney for the Commonwealth, he waived his right to the type of hearing which was prescribed by the Faculty Handbook. In any event, the Commonwealth claims that the scope of the hearing received by Plaintiff was in all respects in conformity with the requirements of the "due process" clause of the Constitution.

### II. Findings of Fact.

1. The Court reaffirms all findings of fact numbered 1 through 62 in its Opinion of January 30, 1974.

2. President Park's letter of December 6, 1971 listed the following reasons for Dr. Chung's termination:

"(a) The recommendations of those most knowledgeable about your teaching and your contribution as a member of the Department of Biology do not support granting you a continuing appointment except under conditions which the administration finds incompatible with the staffing needs of the college and the Department.

"(b) There is significant concern among students in your classes about the quality of your teaching.

"(c) Because of the problems with your teaching, the Department's ability to assign you to your full share of teaching responsibilities is impaired.

"(d) You did not accept the concerns expressed by the administration about your teaching and you took actions which in effect kept the chairman and your department colleagues from fully identifying and resolving the problems."

(R–20; Finding of Fact #53, Court's Opinion of January 30, 1974)

3. The reasons outlined in ¶ 2 were rendered more specific by the presentation to Dr. Chung of detailed documents prior to the effective date of the termination of his employment at Mansfield State College and prior to the date of his hearing. (Exhibits D–3, C–40, R–17, R–18, R–19, R–20)

4. An administrative hearing lasting eight trial days between April 10, 1972 and May 25, 1972 was provided Dr. Chung at the College before the completion of his fifth year of employment. (Hearing panel transcript, Vols. 1 through 8)

5. The first sentence of the opinion rendered by the hearing panel states the genesis and purpose of the panel hearing: "This panel was convened with the joint approval of Edgar R. Casper, Deputy Attorney General, Mansfield State College, Dr. In-Cho Chung and his counsel, Mr. Thomas A. Walrath, Esq., with the understanding that the panel would conduct a public hearing in the nature of a due process hearing to afford Dr. In-Cho Chung an opportunity to hear and

present evidence which might be material, relevant, and competent on the issue as hereinafter defined." (Exhibit P–1, p. 1)

6. The parties stipulated at the hearing that "the nature of this hearing is a public hearing designed to afford Dr. Chung the opportunity to hear and have detailed for him whatever evidence there might be which influenced or guided Dr. Lawrence Park in his decision of December 6, 1971, not to grant continuing employment status to Dr. Chung, and to afford Dr. Chung, through counsel, to follow through with any evidence that he deems necessary to show that decision was arbitrary, capricious, or discriminatory." (Stipulation in trial transcript, Vol. 1, pp. 36–37)

7. Mr. Walrath, counsel for Dr. Chung, and the Attorney General's office agreed to the following procedural rules for the hearing:

(a) The hearing would be public.

(b) Admissibility of evidence would be within the discretion of the panel chairman subject to general considerations of relevancy and materiality.

(c) A written transcript would be kept.

(d) Both parties would present written evidence or oral testimony and would have the right to cross-examine.

(e) Both parties would be represented by counsel.

(f) The panel would submit a written statement of its findings of fact and conclusions.

(g) The complainant would have the right to appeal the decision of the hearing panel pursuant to the Pennsylvania Administrative Agency Law, 71 P.S. § 1701.1 et seq.

(h) The production burden would rest on the complainant to establish a prima facie case of arbitrariness, caprice, or discrimination.

(i) The College would be required to present written evidence to support its decision after the complainant established its prima facie case.

(j) The persuasion burden would rest on the complainant to establish his case by a preponderance of the evidence.

(Exhibits D–4, D–5, D–6)

8. Counsel for Dr. Chung and the College agreed that the issue for the hearing panel would be: "Was the action taken by the administration of Mansfield State College on December 6, 1971 not to grant continuing employment status to the complainant, arbitrary, capricious, or discriminatory?" (Exhibits D–5, D–6; Plaintiff's admissions 2(e)

9. Counsel for both parties agreed to the announced scope of the hearing and understood that the issue would be a factual issue and would exclude the legal issue as to whether Dr. Chung had a contract right to tenure upon completion of his third year of employment. (Exhibits D–4, D–5, D–6)

10. No objection and no comment were made by either party after the chairman of the hearing panel summarized the body's purpose, despite an invitation to do so by the panel chairman. (Hearing transcript, Vol. 1, pp. 7 through 8)

11. The hearing panel did not find the evidence to be in equipoise; instead, the hearing panel found:

"(a) The evidence in this proceeding *clearly* supports the conclusion that the reasons stated in Dr. Park's letter of December 6, 1971 . . . have factual bases.

"(b) Dr. Chung has . . . *utterly failed* to introduce evidence indicating any bias, prejudice, or discrimination against him by Dr. Park or any other member of the faculty or administration of the College.

"(c) In fact, the record *clearly* indicates that many associated with the College went to extreme lengths to determine and define the nature of his teaching abilities and to seek solutions for same, but that Dr. Chung's lack of cooperation became more firmly polarized as time went on, so that it became rather obvious that the inter-

ests of the institution, in the sense of performing its duties and obligations towards the students, left Dr. Park with only one choice."

(Emphasis added) (Exhibit R–20–B)

12. The administrative hearing panel was composed of three unbiased individuals, including one attorney and two professors who taught at colleges other than Mansfield State College. Dr. Chung's counsel prior to the hearing agreed that the hearing panel would be composed of three individuals. (Plaintiff's Admissions 2(a))

13. The chairman of the hearing panel was a local attorney, well known for his honesty, fairness, and competency. (Exhibit D–4)

14. Dr. Chung was vigorously represented at his hearing by an attorney who, as indicated by ¶ 7 above was permitted fully to cross-examine witnesses, to challenge evidence presented by the college, and to present his own witnesses in support of Dr. Chung's position. (Hearing transcript, Vols. 1–8)

15. As agreed, a transcript of the hearing was recorded and provided to Dr. Chung. (Hearing transcript, Vols. 1 through 8)

16. At the hearing, Dr. Chung's counsel introduced evidence in support of Chung's allegations that the procedures used to evaluate Dr. Chung for tenure were irregular and unfair. (Hearing transcript, Vols. 1 through 8; Chung's proposed findings of fact to the hearing panel, C–45 and C–54; Exhibit A to Plaintiff's request for admissions)

17. The hearing panel chairman ruled that evidence introduced by Dr. Chung's attorney relating to alleged procedural irregularities was relevant only to the extent that it tended to prove that President Park's decision was not founded upon fact or was based on bias or prejudice. (Exhibit R–20–B; Hearing transcript, Vol. 1, pp. 5, 6, 104, 123; Vol. 4, pp. 53 through 55)

18. Aside from hearing evidence presented by both parties, the hearing panel received briefs and proposed findings of fact from the disputants. (Hearing panel transcript, Vols. 1 through 8)

19. The hearing panel members wrote an opinion and found the facts enumerated in ¶ 11 above. (Exhibit R–20–B)

20. The Secretary of Education upheld the decision of the hearing panel. (Exhibit R–20–A)

21. Dr. Chung did not seek a review in the state courts of either the findings of the panel or the procedures utilized, although an appeal pursuant to the Pennsylvania Administrative Agency Law, 71 P.S. § 1701.1 et seq. was clearly contemplated, see ¶ 7(g) above. (Testimony of Thomas Walrath)

22. The College tenure policy permitted dismissal of a tenured professor *inter alia* for the following reasons: ". . . physical or mental disability . . . when they seriously interfere with the discharge of his duties; incompetency; wilful and persistent neglect of duty. . . ." (Exhibit R–21, ¶ 4)

23. Dr. Chung did not object to the type of hearing provided for him. (Plaintiff's amended answer to Defendants' interrogatories; Plaintiff's admission)

24. Dr. Chung did not request or demand that the procedures provided for in the Tenure Policy for termination of a tenured professor be utilized in his case, but instead through the negotiations of his attorney agreed to the hearing procedures that were followed. (¶'s 6, 7, 8, 9, 10, 12 above)

25. According to the College Tenure Policy, the responsibility for requesting that the hearing procedures for probationary professors be employed was the responsibility of the aggrieved faculty member. The Tenure Policy stated: "12. If the faculty member wishes to contest this decision, *he may request the president to present the case to an appeal committee of the* faculty. . . ." (Emphasis added) (Exhibit R–21, ¶ 10)

26. Under the Tenure Policy, any appeal was contingent upon the aggrieved faculty member's decision to appeal and

was not automatic. (Exhibit R–21, ¶ 13)

## III. Discussion.

This Court has held that Dr. Chung had tenure. The College Tenure Policy governing tenured college professors at Mansfield State College explains in some detail the nature of the "due process" hearing to be afforded tenured professors upon dismissal. For example, § 10 of the faculty handbook provides that prior to the dismissal of the tenured faculty member, the individual be given an opportunity to correct his deficiencies.

There is some question whether the college has followed the precise procedures outlined in the faculty handbook; however, the Commonwealth asserts that nevertheless Chung is not entitled to relief for two reasons. First, subsequent to the trial of this action, the Commonwealth has raised the question of sovereign immunity, and second, the Commonwealth asserts that Dr. Chung has waived whatever hearing rights a tenured faculty member is entitled to pursuant to the Faculty Handbook over and above what he actually received. On the first issue, the Court is of the view that the immunity defense cannot now be utilized by the Commonwealth but as to the "waiver issue," the Court does find that Chung has waived whatever additional rights he might have been entitled to under the Faculty Handbook.

■ The defense of sovereign immunity can be waived by a general appearance and litigation in federal court. Skehan v. Board of Trustees of Bloomsburg State College et al., 501 F.2d 31 (3d Cir. 1974). The Court had no hint that the Commonwealth would raise this defense until the receipt of a letter dated March 27, 1974 by Deputy Attorney General Robert F. Nagel several days before the hearing. No evidence was introduced on this issue at trial and legal argument will not be entertained at this time.

As the findings of fact disclose, there can be no question but that Dr. Chung received a hearing which comported with the bare minima of "due process." See Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). To reiterate the findings of fact somewhat, Dr. Chung received an eight-day hearing during which he was fully able to cross-examine his accusers, subpoena witnesses, present evidence, and in effect, demand a full accounting from the college as to whether the decision of President Park to fire him was supported. No interest in liberty, such as free speech, is involved. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

The College dismissed Dr. Chung for incompetence and intransigence with respect to his dealings with his superiors, both being reasons for dismissal of a tenured faculty member. The hearing panel after an exhaustive hearing clearly found that Dr. Park's reasons for dismissal of Dr. Chung were indeed motivated by the two factors noted, intransigence and incompetence.

■■ It is hornbook law that contractual provisions can be waived, expressly or impliedly. 8 P.L.E., Contracts § 300. Through the process of negotiation, Dr. Chung made the conscious choice of obtaining a "due process" hearing which had some procedural aspects which were different from those employed in a normal tenure revocation proceeding. Perhaps the most important difference between the hearing afforded Dr. Chung and the hearing usually afforded tenured professors was that the burden of proof rested upon Dr. Chung's shoulders. However, a careful reading of all the materials surrounding the hearing afforded Dr. Chung has convinced this Court that the College came forward with all the evidence necessary to establish Dr. Chung's lack of competency and that Dr. Chung had the opportunity to refute all the evidence presented.

The hearing in this case was held prior to the effective date of Dr. Chung's

termination of employment. Compare Perry v. Sindermann, *supra*, with Arnett v. Kennedy et al., 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15, decided April 16, 1974, where it was stated "since the purpose of the hearing in such a case is to provide the person 'an opportunity to clear his name,' a hearing afforded by administrative appeal procedures after the actual dismissal is a sufficient compliance with the requirements of the Due Process Clause."

IV. Conclusions of Law.

1. The "due process" hearing afforded Dr. Chung gave him a complete opportunity to challenge the sufficiency and accuracy of the reasons given for his termination, such as bias, prejudice or other improper motivation.

2. The placement of the burden of production of the evidence on Dr. Chung did not deprive Chung of "due process" as the College came forward with substantial evidence to support Dr. Chung's termination and as Dr. Chung was given the opportunity to rebut that evidence.

3. Neither the evidentiary rulings nor the manner in which the "due process" hearing was operated denied to Dr. Chung "due process" of law.

4. Dr. Chung by agreeing to the hearing and participating fully in it waived objection to the differences in the hearing granted him versus the hearing to which tenured faculty members were entitled.

5. The conclusion of the hearing panel would have supported the termination of a tenured professor at Mansfield State College.

6. The conduct of the hearing provided Dr. Chung was in substantial compliance with the College Tenure Policy.

7. Mansfield State College waived any defense of sovereign immunity by not pleading and attempting to prove it either pre-trial or during the course of the trial.

8. There was no breach of contract by Mansfield State College in failing to follow the precise procedures of the Faculty Handbook as Dr. Chung did not request that those procedures be followed in his case.

An appropriate order will be entered.